UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS S. CANE | No. 2:16-cv-1699-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Lewis S. Cane seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from May 18, 2010, through January 15, 2015, the date of the administrative law judge's ("ALJ") final decision.  (ECF No. 17.)  The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment, and plaintiff filed a reply brief.  (ECF Nos. 23, 27.)

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 8, 14.)

1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on February 10, 1963; has completed four or more years of college; can communicate in English; and previously worked as a real estate investor and remodeler. (Administrative Transcript ("AT") 473, 478-79.)[2] In April 2009, plaintiff was involved in a major motorcycle/car accident, sustaining numerous injuries as described by the consultative examiner, Dr. Fariba Vesali:

> He sustained multiple rib fractures, right clavicle fracture, scapula fracture. He had chest tube placement. The claimant sustained open book fracture of pelvis, underwent surgery. He sustained a left femur fracture, underwent open reduction internal fixation of left femur. He sustained thoracic spine fracture, right thumb fracture. He sustained distal left radius and ulna fracture and underwent open reduction internal fixation of left radius and ulna.

(AT 949.)

On March 5, 2010, plaintiff applied for DIB and SSI, alleging that his disability began on April 11, 2009. (AT 236-37, 407, 414.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on March 20, 2012, at which plaintiff, represented by counsel, testified. (AT 192-235, 236-37, 241-42.) The ALJ subsequently issued a partially favorable decision dated May 18, 2012, determining that plaintiff was disabled from April 11, 2009, through May 17, 2010. (AT 247-67.) Thereafter, on September 19, 2013, the Appeals Council remanded the case to the ALJ for further consideration of the time period beginning May 18, 2010. (AT 275-78.)

On remand, the ALJ conducted a supplemental hearing on March 12, 2014, at which plaintiff, represented by counsel, and Dr. Phillip McGowan, a medical expert and board-certified

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

orthopedic surgeon, testified. (AT 109-48.) Based on Dr. McGowan's finding of inadequate medical evidence and a recommendation for further evaluation, the ALJ ordered a further consultative orthopedic evaluation. On April 23, 2014, consultative examiner Dr. Fariba Vesali, who is board certified in physical medicine and rehabilitation, performed a comprehensive orthopedic evaluation. (AT 949-53.) Subsequently, on August 27, 2014, the ALJ conducted a further supplemental hearing at which plaintiff, represented by counsel, and Dr. Eric Schmitter, an orthopedic medical expert, testified. (AT 151-91.)

On January 15, 2015, in a 29-page decision, the ALJ found that plaintiff had not been under a disability, as defined in the Act, from May 18, 2010, through the date of the ALJ's decision. (AT 61-89.) That decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for further review on March 16, 2016. (AT 6-12.) After obtaining an extension from the Appeals Council, plaintiff subsequently filed this action on July 21, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Rey; (2) whether the ALJ failed to consider the opinion of Dr. Chobanov; (3) whether the ALJ improperly evaluated the mental opinion evidence; and (4) whether the ALJ erroneously discounted plaintiff's testimony.[3]

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is

---

[3] Plaintiff's brief raises these issues in a somewhat different order.

responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

        Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4] As an initial matter, the ALJ found that plaintiff met the insured status requirements of the Act for purposes of DIB through September 30, 2013. (AT

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

64.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since April 11, 2009, plaintiff's alleged onset date.  (Id.)  At step two, the ALJ found that plaintiff had the following severe impairments: open book fracture of the pelvis - status post repair with external fixator with residual pelvic pain and right foot drop, obesity, lumbar degenerative disk disease, right knee strain, status post open reduction internal fixation of the distal left radius and ulna, anxiety, depression, and posttraumatic stress disorder.  (Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 65.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c).  The claimant can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently. He can stand and/or walk for six hours in an eight-hour workday with breaks every two hours.  He can sit for two hours in an eight-hour workday with breaks every two hours.  He requires no assistive device for ambulation…[H]e ha[s] no postural limitations.  He has no limitation with fingering, feeling or using the right hand.  He can frequently reach and handle with the left hand.  He can perform unskilled tasks with a specific vocational profile of 1 and 2.  He can perform lower level semiskilled tasks with no more than a specific vocational profile of 3.

(AT 67.)  At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 87.)  However, at step five, the ALJ found that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  (Id.)  Consequently, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from May 18, 2010, through January 15, 2015, the date of the ALJ's decision.  (AT 88.)

///

///

///

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Rey*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Id.</u> at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund</u>, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

Although plaintiff's long-time treating physician, Dr. Rey, opined that plaintiff remained disabled during the relevant period, the ALJ provided specific and legitimate reasons to discount Dr. Rey's opinion.

As an initial matter, the ALJ found that Dr. Rey provided few objective findings to support his assessments, and his treatment records likewise contain little in the way of objective medical findings. (AT 85.) Indeed, both medical experts who testified at plaintiff's administrative hearings opined that Dr. Rey's treatment notes lacked the requisite objective findings to support his opinion. (AT 122-37, 160-61 ["I would be embarrassed if I were a physician submitting this note. It's sort of an impression. It's certainly not a physical examination and summation in the usual manner which we learn in medical school. It's sort of taking the subjective symptoms and then recording them. But in terms of objective findings, it doesn't even mention them."].)

The ALJ also reasonably relied on the opinion of the consultative examiner Dr. Fariba Vesali, who examined plaintiff on April 23, 2014, reviewed plaintiff's available medical records (including imaging studies, physical therapy notes, chiropractor notes, and medical progress notes), and prepared a detailed report with objective findings. (AT 80-81, 85-86, 949-53.) Dr. Vesali opined that plaintiff could walk and stand for 6 hours in an 8-hour day with breaks every 2 hours; could sit for 6 hours in an 8-hour day with breaks every 2 hours; did not need an assistive device for ambulation; could lift/carry 50 pounds occasionally and 25 pounds frequently; had no postural limitations; had no limitations on fingering, feeling, or using his right hand; and could perform frequent reaching and handling with his left hand. (AT 953.) Because Dr. Vesali, a specialist who is board certified in physical medicine and rehabilitation,[6] personally examined plaintiff and made independent clinical findings, her opinion constitutes substantial evidence on which the ALJ was entitled to rely.

////

---

[6] Plaintiff makes much of the fact that he was not further evaluated by an orthopedic specialist. However, a specialist in physical medicine and rehabilitation was likewise competent to perform a thorough examination and assessment of plaintiff's functional capacity.

Finally, the ALJ also properly relied on the opinion of medical expert Dr. Schmitter, who generally agreed with Dr. Vesali's functional assessment, and opined that, after plaintiff's accident, "being generous you could consider a period of significant disability to last a year. After that…unlikely…So six months significant problems, maybe up to a year." (AT 83-87, 171-74.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

Therefore, the ALJ did not err in discounting Dr. Rey's opinion.

*Whether the ALJ failed to consider the opinion of Dr. Chobanov*

Plaintiff's argument that the ALJ failed to consider the opinion of Dr. Chobanov lacks merit.

As the ALJ noted, Dr. Rey referred plaintiff to Dr. Chobanov, a neurologist, for evaluation of plaintiff's pain and paresthesias. (AT 81.) By virtue of a clinical examination, nerve conduction studies, an EMG study, and an MRI of the lumbar spine, Dr. Chobanov confirmed the presence of moderate to severe facet arthrosis, as well as acute and chronic right-sided L5 radiculopathy with a right foot drop. (AT 558-60.) She also noted that he had normal bulk, tone, and strength in all four extremities, except for right side dorsal flexor weakness and reduced sensation. Plaintiff could not heel walk, but could perform tiptoe and tandem walk. (AT 968.) With respect to symptom management, Dr. Chobanov recommended gabapentin as a preventative pain medication. (AT 560.)

To be sure, Dr. Chobanov's evaluation confirmed, and the other medical experts and ALJ agreed, that plaintiff suffered from back pain with radiculopathy, as well as a right foot drop. However, contrary to plaintiff's contention, the ALJ thoroughly summarized and considered Dr. Chobanov's treatment records and diagnostic studies. (AT 81-82 [devoting a cumulative page to discussing Dr. Chobanov's records].) Moreover, Dr. Chobanov did not assess any specific functional limitations; indeed, plaintiff fails to point to any specific functional limitation by Dr. Chobanov that the ALJ failed to incorporate into the RFC.

As such, no remand is warranted based on Dr. Chobanov's opinion.

*Whether the ALJ improperly evaluated the mental opinion evidence*

Plaintiff first argues that the ALJ erroneously discounted the opinion of plaintiff's licensed clinical social worker ("LCSW"), Jennifer Kirkham. Plaintiff received treatment from Ms. Kirkham between approximately April 2010 and April 2011. Treatment notes indicate the discussion of numerous issues, including asserted physical difficulties, monetary resources, spousal separation, and dating. (AT 873-82.) On November 29, 2011, Ms. Kirkham completed a functional assessment indicating that plaintiff had numerous moderately severe mental limitations, as well as a substantial loss in his ability to perform even simple, unskilled work, rendering plaintiff disabled. (AT 897-902.)

As an initial matter, the ALJ noted that Ms. Kirkham, as a LCSW, is not an acceptable medical source under the Commissioner's regulations. (AT 74.) He nevertheless proceeded to consider Ms. Kirkham's opinion, but found that her treatment notes consisted largely of plaintiff's subjective reports of his own symptoms, and contained only minimal clinical findings to support her severe opinion. That conclusion is supported by the record, and serves as a proper basis for discounting Ms. Kirkham's opinion.

Plaintiff further contends that the ALJ improperly rejected a portion of consultative examining psychiatrist Dr. Keith Whitten's opinion. On September 28, 2010, Dr. Whitten performed a comprehensive psychiatric evaluation of plaintiff. (AT 771-75.) Plaintiff drove himself to the evaluation and presented as healthy and pleasant, if a little verbose. (AT 771.) Plaintiff described the trauma of his accident and hospitalization, explained that he was still in a lot of pain, and stated that he was going through a difficult divorce and financial difficulties. (AT 772.) On a mental status examination, plaintiff had good grooming and hygiene, a normal gait, a cooperative and pleasant attitude, normal speech, a euthymic mood and broad affect, normal thought processes and thought content, good eye contact with no obvious pain behavior, normal orientation, good immediate memory, fair recent and remote memory, a normal fund of knowledge/information, normal intelligence, fair concentration, intact abstract thinking, and fair insight and judgment. (AT 773-74.) Dr. Whitten opined that plaintiff could manage his own

funds, perform simple and repetitive tasks, accept instructions from supervisors, perform work activities on a consistent basis, and maintain regular attendance. (AT 775.) However, Dr. Whitten also stated that plaintiff may not be able to interact with coworkers without being side-tracked or distracted; complete a normal workweek without interruption from his psychiatric symptoms, or deal with the usual stressors encountered in a competitive work environment. (Id.)

The ALJ considered and credited the majority of Dr. Whitten's opinion, except for his assessed limitations with respect to ability to interact with coworkers, complete a workweek, and deal with stressors. (AT 69-70, 73-74.) The ALJ correctly noted that Dr. Whitten's largely normal mental examination findings did not support such assessed limitations, and Dr. Whitten's report did not explain how he derived them. (AT 73-74.) Indeed, Dr. Whitten himself stated that plaintiff "has some symptoms of post-traumatic stress disorder, but he appears to be primarily limited by his physical health issues." (AT 775.)

Finally, the ALJ appropriately relied on the opinion of state agency psychologist Dr. Berkowitz, who reviewed plaintiff's records and Dr. Whitten's report, and likewise concluded that there was "no current objective evidence even within that exam or overall longitudinal history" to support Dr. Whitten's limitations pertaining to coworkers, completing a workweek, and stressors. (AT 792.) Dr. Berkowitz opined that given plaintiff's "overall situation, he may have some difficulties with persistence and pace. However, he appears capable of persisting at simple and lower level semi-skilled tasks within his physical limitations." (Id.) Dr. Berkowitz's opinion is consistent with the clinical findings made in the course of Dr. Whitten's examination, plaintiff's activities (as discussed more below), and the record as a whole, and thus the ALJ properly relied on Dr. Berkowitz's opinion.

Consequently, substantial evidence supports the ALJ's evaluation of the mental opinion evidence.

*Whether the ALJ erroneously discounted plaintiff's testimony*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective

10

>pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
>Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

Here, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's credibility.

First, plaintiff's allegations of continuing disability are inconsistent with the weight of the medical opinion evidence, as properly weighed by the ALJ. Although lack of medical evidence to fully corroborate plaintiff's allegations cannot form the sole basis for discounting plaintiff's

11

1  subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch,
2  400 F.3d at 681.
3  Second, plaintiff's treatment records themselves indicate that plaintiff had significantly
4  improved since May 18, 2010. (AT 76-78.) For example, by March 19, 2010, plaintiff's gait,
5  while still with a significant limp, was noted by his physical therapist to be improved, with
6  plaintiff no longer requiring a cane or walker. (AT 637-38.) Subsequently, on July 22, 2010, Dr.
7  Rey noted that plaintiff was "doing better all the time" with normal sensation, strength, gait, and
8  deep tendon reflexes. (AT 831.)
9  Finally, the ALJ also found plaintiff less than credible based on his activities. (AT 66.) In
10 a treatment note dated April 27, 2010, Ms. Kirkham reflected that plaintiff had enjoyed a nice
11 time with his son in Lego Land in Southern California. (AT 66, 877.) Plaintiff reported in
12 January 2011 that he was traveling to Costa Rica to do white water rafting, visit a coffee
13 plantation, and ride a gondola through the tree canopy. (AT 66, 881.) During that same visit, he
14 mentioned that he was down to only six investment properties and considered working on a house
15 as an "unemployment plan." (Id.)  At the August 27, 2014 hearing, plaintiff testified that he
16 continued to maintain his rental property by mowing the lawn, taking care of the pool, and doing
17 minimal repairs. (AT 66, 154.) The ALJ reasonably concluded that those activities suggested
18 that plaintiff was not as limited as he alleged.
19 Therefore, the ALJ legitimately discounted plaintiff's credibility.
20 V.     CONCLUSION
21 For the foregoing reasons, the court concludes that the ALJ's decision was free from
22 prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT
23 IS HEREBY ORDERED that:
24     1.     Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.
25     2.     The Commissioner's cross-motion for summary judgment (ECF No. 23) is
26 GRANTED.
27     3.     The final decision of the Commissioner is AFFIRMED, and judgment is entered
28 for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: July 27, 2017

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE